May it please the Court. My name is Walton Morris. I represent Montana Environmental Information Center and Sierra Club, entities that I'll collectively refer to as MEIC. It's my intention today to reserve three minutes for rebuttal, if I can. There are three main issues in this appeal. The first issue is the jurisdictional issue of whether this action is barred by the 11th Amendment. The second is the merits issue of whether Montana has a non-discretionary duty. The third is whether the action is barred by principles of exhaustion or rightness. The 11th Amendment issue must be addressed first, before the merits issue, because it challenges the Court's jurisdiction. But not before the rightness issue, right? Yes, before the rightness issue. Why? Because the rightness issue here is not a constitutional rightness issue. It's a prudential rightness issue. Why is that? Because that is how the opposing parties have argued it. To the extent that there is a constitutional rightness issue, then yes, it would have to be addressed before the 11th Amendment issue. But we have alleged a pattern in practice, continuing pattern in practice, of ignoring a non-discretionary duty. Has the permit been issued yet, incidentally? The permit has not been issued, to my knowledge, the last I heard. That could be a problem for your side, could it not? It would. Yeah. It would change, well, it would make our action move. Well, maybe you ought to start with rightness. Obviously, there's a concern in the panel about whether this is right, and then we can go to the other issues. But it's really your choice. No. I'd be happy to start with rightness, if you wish. As far as constitutional rightness is concerned, we have alleged an ongoing pattern in practice of violating a non-discretionary duty under SMACRA. All I could see that you wanted the state to do, that you thought it had a duty to do, was provide a definition. But I couldn't see where in the federal statute the states were required to provide a definition in order to have a complying plan. The states are not required. What have I missed? You have missed nothing. First of all, Montana has, the Montana program, the federally approved Montana program, has a definition of material damage to the hydrologic balance. And so that definition supplies material damage criteria that Tracy Stone Manning has to use in performing CHIA. So if that already exists, then with regard to, there are all kinds of interesting metaphysical questions about whether that's federal law or whatever. But whatever it is, it does have a definition, and she's supposed to be doing it. That's right. If she isn't doing it. That's right. Then, and you have a, and she approves the plan and doesn't do it, then you file a, then you have a legitimate ground to challenge. We have a right for judicial review under 1276. Now, I understand there's a separate affirmative citizen suit, but I don't see how it applies here because your complaint is that, your only possible complaint is that there is something she's supposed to do and she isn't doing it. It is a cause of action for a compliance order, which is exactly what Congress authorized. I understand, but what is the compliance order here when she, you have another set of complaints about things you're saying she should have a policy about. But she does have a policy about the fact that if there's interference, if the water quality standard isn't met, then that's supposed to get the permit. So that standard exists. Why do you need another one? We want her to, we want the compliance order to tell her that she must apply that standard when she does CHIAs. But it looks like she already is. Pardon? I thought she already was. She's not. That's our plea, that is our pleading. Since 1995, her predecessors have approved 19 cumulative hydrologic impact, issued 19 cumulative hydrologic impact assessments, and not one of them, according to our pleading, according to our analysis of those documents, analyzes the water quality status of the potentially affected resources. Not one of them reaches the required determination that the mine has been designed to prevent excursions from water quality standards outside the permit area. It simply recites the definition and makes a conclusory finding. What we are asking the district court to do is issue a compliance order saying that she must, her CHIAs must assess the water quality status. If they considered it and issued a finding, the fact that you think it's not thorough enough is different from saying they didn't consider it. That's right. Whether or not it's thorough is a matter of judicial review. But if it doesn't include the criteria that the state program requires it to include, then we are entitled in advance to a compliance order telling her to stop doing that, to start doing CHIAs the way that the state program requires her to do them. To view 1270A2 in any other way nullifies it, because any final agency action is clearly subject to judicial review. And 1270A2 is not another avenue for judicial review. It sure is neat to go with the two other circuits that have considered that or considered the questions that you raised, Bragg and the Fourth Circuit. And I think there was a, what was it, Third or Seventh Circuit as well, that have said either the secretary doesn't approve and it's a federal matter or else the secretary does approve and it's a state matter, so that you don't have needless litigation and competing authorities, too many cooks in the soup. First of all, that's an entirely different issue in this case than the one we were just discussing. I'm happy to turn to that now. Well, before you leave, Reitman, are you arguing the firm prediction rule? Is that essentially what you're relying on? Because I must say that it troubles me that one can assert that a permit, which has not yet been issued, may be issued with the wrong standard. Isn't that kind of where we are here? Not exactly. Where we are here is a pattern in practice since 1995 of issuing 11 consecutive CHIAs. But you do focus on a particular pending permit. That's right, because these groups have members who will be adversely affected. Only if it's denied. Only if it's granted. Only if it's granted. Right, so that's why you do walk into the firm prediction rule, don't you? Well, in this case, we can make a firm prediction, because in response to our notice of intent to sue, DEQ, Montana DEQ, has done absolutely nothing. And in an informal letter in response to the notice of intent to sue, which is part of the record here, has told us that they do not believe they're violating the law. But what are you asking them to do? You're asking them to issue a reg, write a piece of paper. Now, before the permit, what should they be doing before they decide the permit? Suppose the permit comes out and it says these are the criteria we applied and this is what we did with the water quality and so on. What we're asking the district court to do is issue an order directing Tracy Stone Manning to use water quality standards as material damage criteria. But you're not asking for a reg or a written policy. Or anything that has to show up before the permit decision is made. Does anything have to show up before the permit decision is made? I'm sorry? Does anything have to eventuate in public before the permit decision is made under the rules that you're asking for? I'm not asking for a rule. We're asking for a compliance order. Right, okay. And the order simply tells her how she must do the CHIA. But she might do it anyway. That's always the case. I'm worried about what this means. It's just like an injunction action. I'm worried about what this means practically. If you get an order that you don't need in an unripe situation, I'm thinking what it may mean is that instead of the state administrator exercising her administrative judgment and discretion with the various state officials that she usually meets with in order to do it, there's a magistrate or a special master in federal court. And she and her officials go over and meet with you and the representatives of the other people that don't want this coal mine and some representative from the judge's office or the judge. And the whole thing gets negotiated there instead of the state bureaucracy where, if there's been no violation, it's supposed to be worked out. I can't imagine proceedings like that taking place. A federal judge issues a compliance order to the state official, telling her that she must do her CHIAs in a way she has not been or her predecessors have not been doing them in the past. And she simply follows the order. This is no different in terms of rightness. And what would it say? Or actually the issues that you're... What would the order say? The order would say that in performing CHIAs, you must use water quality standards as material damage criteria and you must make your material damage determination in the form of... in a way that encompasses at least whether the proposed operation has been designed to prevent material damage to the hydrologic balance outside the permit area. But your view is the law already says that? Yes. It does already... It says... So she's going to do it? She hasn't been doing it. That's the problem. Well, isn't that disputed? Apparently 45% of the time perhaps she didn't do it, but the 55% of the time apparently she did. I don't know where those figures come from, Your Honor. There probably is a dispute about this, but we're entitled to have the allegations that we've made in the complaint taken as true at this point. But your complaint isn't exactly that she didn't do it. It's that she didn't explain to you how she did it. No. The complaint is that she did not determine whether or not these proposed mines, when they were proposed... When she reissues the permit, you said that she conclusively says that she did it. Your complaint is that she isn't explaining to you how she did it. No. That's part of it, but that's not all of it. What we've said is that she is not determining whether or not the mine has been designed to prevent violations of water quality standards. For instance... She doesn't say in her order that I've done this to you and I've concluded that it was designed so as not to do X, whatever the standard says? She uses the statutory definition. That's right. But she does not make a finding that it's been designed to prevent water quality standards, and she doesn't analyze whether it's been designed. Analyze is what I said. It's not explaining herself. But does she not say I've done this? Both. Well, yes, she recites the regulation and she makes a pro forma finding that it has been complied with, but there is no analysis. And she does this in circumstances, for instance, where the receiving waters are already on the Clean Water Act 303D list. They're already impaired. They don't meet water quality standards as it is. It's impossible, implausible at least, to find that a mine has been designed to prevent violations of water quality standards, causing or contributing to them, if the area is already out of compliance. Did you challenge any of the other prior permits which allegedly have this problem? My clients did not. Would there be anything? I mean, what would be the prejudice if we were simply to wait for the permit to be issued and then examine your criticism? You would force my clients to undergo another repetition of this unlawful string of behavior. Well, that's what happened. You had a chance to challenge it before, and they did not, if I heard you correctly. There may have been many reasons why my clients didn't challenge. Their members may not have been as adversely affected as they are here. They may not have been able to find an attorney who's expert in surface mining law at the time to do that. They may not have had the resources at the time to do that. But as a practical matter, I mean, isn't the real strength here that you don't want to be doing it in a review proceeding because, A, there's an arbitrary and capricious standard, and, B, because I think you have some issue about whether you're in federal or state court at that point? That is not why my clients have brought this case. They've brought this case because Congress authorized them to do this in advance. What you're saying, Your Honor, is that because there's judicial review, we can just ignore the cause of action that Congress has created. I'm not sure that you're right about Congress creating that. What they created went to nondiscretionary duties. Absolutely. And it seems to me that your whole argument is that she is not exercising her discretion with enough explicit analysis. No. She has no discretion to do, under the Montana program, to do a CHIA without using water quality standards. She says she does. She doesn't. Well, she says she does. You say she doesn't. And that's a matter of proof. And you're saying that your reason for thinking she doesn't is that she's conclusory when she says she does. No, I'm saying our reason for thinking that is looking at the CHIAs that do not use water quality standards as material damage criteria. They simply make a pro forma finding in the framework of the Montana definition. You call it pro forma. She says it's a finding. It's not a finding that the mine has been, in no case, is there a finding that the mine has been designed in a way that will prevent causing or contributing to violations of water quality standards. That's just not there. That's what this case is all about. Now, that standard is in the federal statute. No, that is in the federally approved Montana state program, which is federal law. There's no such similar standard in the ñ because the federal statute says nothing about what you're supposed to find. There is no federal regulatory definition of the term. Thank you, Counsel. Your time, the time for your side has expired. Thank you. We'll hear from the other side. Good morning. May it please the Court. My name is Dana David with the State of Montana. I'd like to reserve seven minutes to address the Court today, reserve four minutes each for my co-counsel. Mr. Martin will talk about the redressability issue under the Article III of the Constitution, and Mr. Emmerich will talk about ñ Is it correct that you're not raising any constitutional right in this question? We are raising a constitutional right in this question because, again, I prefer that Mr. Martin address this as his issue, but there's a real issue here. Counsel, before we proceed, your side has a total of 15 minutes. That's right. You control the time, and it's nice to say that you're saving four minutes, but if our questions take you beyond that, your plan will have disappeared. I understand that, Your Honor. All right. Very well. And repeat again for the record your name and which ñ My name is Dana David. I'm Staff Legal Counsel with the Department of Environmental Quality. For the State of Montana. Yes. Very well. Thank you. Stone Manning. That's correct. Well, suppose what had happened here was the State statute says you're supposed ñ the Federal statute says you're supposed to do a CHIA, and the State statute says you're supposed to do a CHIA, and, in fact, she just never did CHIAs at all. Well, I would agree that that would be an issue. The question is ñ I don't say it's an issue. An issue for what? Well, I don't ñ Could you bring this case and say, in the last 19 approvals, she didn't do any CHIAs, and we want an order in the Chastity to do a CHIA. Well, she did do the CHIAs, Your Honor. I understand that, but I'm trying to get a hold of your argument. Right. So, under Bragg and ñ I'm not asking about Bragg. Right now I'm asking about the rightness question. Then I want to ask the same hypothetical with respect to the Ex parte Young question. The issue about the rightness question here is that there is no injury in fact, just for the questions the Court asked earlier today, because there's no way to tell whether or not they're going to be injured until an application has been filed. And part of that application ñ Application's been filed, as I understand it. Yes, and for the Area B expansion, it has been filed. So that really raises, like, a lot of issues that the State is worried about, that they're not going to ñ well, as far as the rightness issue goes, that they're not ñ there is so many plausible routes that this case could take, because the hydrologic balance analysis, the material damage determination, is highly complex. It is resolved to a large degree under an iteration, under review of the permanent application. Most importantly, for the case that's argued here, about formulation in an application of material damage criteria ñ You're not going anywhere near answering my question. I'm sorry, Your Honor. It's ñ I'm trying to understand what is the role of these citizenship provision ñ citizen suit provisions in instances in which there is going eventually to be a decision made on the permit, yes or no. And there is going to be an administrative review. And the question is, are you saying in those circumstances, no matter how blatant it is, that we know she's not going to comply with the statute in advance, that you can't get an order saying comply with the statute? Well, I don't know how you'd ever know that, but ñ Well, I just told you how. I made you a hypothetical. That's what a hypothetical is. It's hypothetical. Right. Well, under Bragg and Hess, that ñ I'm sorry, Your Honor. Just bear with me just for a second. Under Bragg and Hess, if you look at those decisions, that for an approved State program, it is a question of State law. And because it's a question of State law, the citizen supervision does not apply here because it does not meet the standards of the Ex parte Young Exception. Because it's solely an ñ That's what they say. And we would have to decide whether to agree with them or not. But I'm asking you, do we ñ should we be deciding? The ripeness issue is really, do we decide that, or is this just not in the ballpark at this point because we ñ there's no ripe issue. And that's what I'm trying to figure out. There is no ripe issue, because there's no way that they can determine that they're going to be injured until actually the permit is issued. So what are the citizenship provisions for, then? They're not for permitting. If you follow Bragg and Hess, that the ñ arguably the venue that the citizen supervision gives plaintiffs such as MEIC is very, very narrow. And there's ñ perhaps in the case where there's a blatant failure ñ I mean, perhaps if Stone-Manning would violate a federal mandatory provision in the course of her permit review, that would trigger a citizen suit action. But to fashion a citizen suit remedy in a permitting context is treacherous. And the MEIC has chosen to take that route as their choice, but it's probably the most difficult route to take. They have a plethora of state remedies available to them. They can challenge the permit once it's issued. There's a state mandamus provision that's very similar to the citizen suit. They can petition ñ if they thought the state's program was inadequate, they could petition for rulemaking to adopt these criteria that they think are important. Also, they could petition OSM to amend the state program because it doesn't comply with minimum federal requirements. So doesn't the federal government have the right to enforce the state permitting provisions? They do. Okay. They do, and so that's ñ How do they get that if it's not a federal law in some sense? If you actually ñ some of the arguments that were made in the briefs talk about the ñ MEIC tries to bootstrap certain portions of the program into saying that SMACRA totally federalizes state law. Well, it could be totally federalized, or it could be federalized in some sense. Well, let's look at the substitute enforcement provision of SMACRA. If you look at that, the substitute enforcement provision does not permit the federal government to step into a coal mine that's regulated by a state and inspect. The substitute enforcement provision sets forth very detailed series of events that has to happen before the federal government can exercise that right. And also in the case of imminent danger, which they cited in the reply brief, in that case ñ But what's interesting is if ñ first of all, it's not that complicated. As I understand it, if they're told it's not being enforced, they give them 10 days' notice, and if they don't enforce it, they go enforce it. Well, there's more to it than that. I mean, the 10-day notice either triggers state action, or the state has to explain to OSM why they're not doing it, and then if they ñ Okay, but still what the federal government is enforcing is not the federal statute directly. It's the state program. I would say that's a difficult issue, and arguably ñ I thought it says that specifically. If you actually look at the CFRs, if you look at the 733 CFRs, that it actually specifically states until the feds have a hearing on the record that the state continues to be able to enforce until actually the federal government ñ I didn't say the state couldn't enforce, but the feds can also enforce.  The whole notion that the statute says that state jurisdiction is exclusive is actually not true. What does the statute actually say? Well, I think that's where you have to go back to Hess and ñ I don't want to do that. I want to go back to the statute. What does the statute say? Well, that word has to have some meaning. What does it say, though? I mean, the states are granted exclusive ñ Would you read it to me, please? Are you talking 1270? What statute are you talking about? The statute that is relied upon as providing exclusive ñ I believe that's 30 U.S.C. 1253. 1253. Yes. That if the state wants to have an approved program, if the state wants exclusive jurisdiction over coal mining, then they have to submit a program to the ñ It doesn't say, and then they get ñ then it becomes exclusive? My recollection is ñ I thought once the state program was approved, even in those circumstances where there's some nondiscretionary duty and there's no Rule 11 problem and the feds do enforce, it's the state program. Is that right? Exactly, Your Honor. I was thinking of things like where the federal rules are no blasting at night, and the state of Alaska filed an amicus brief, and they said that isn't very practical for mines that are near villages and towns that are north of the Arctic Circle. I mean, my town is just 125 miles south of it, and that would mean people would be kept awake all night by blasting. So Alaska has different blasting rules to account for the sun not going down, and that's part of this cooperative federalism. So it sounds like the feds won't go in there and enforce the federal rule when the state's not enforcing the federal rule. They won't, and they certainly won't enforce the material damage definition because if there's any one aspect of this ñ it distinguishes our case from Bragg and Hess because the material damage is solely a provision of state law, and certainly in Bragg, the 100-foot stream rule in Bragg was also a minimum federal requirement. In Hess, they had the alternative bonding provision that was a subject to that case, which was still only a provision of state law, but it really wasn't a permitting issue. Here with the material damage determination, you have something that is solely a permitting issue that is fraught with ñ I mean, it's ñ Is there any nondiscretionary duty regarding this water issue in this particular coal mine case that the state is accused of not enforcing? I couldn't find one. I couldn't think of one, Your Honor, especially when you look at what the material damage definition is. The criteria that MEIC and Sierra Club want the state to adopt, it's not clear in any given application any criteria are necessary. There are certain ñ for example, there are certain mines where the water that might be contaminated by the mining operation may never migrate off the mine property. If the CHEA finds that's the case, then there's no reason to consider any criteria, whatever those criteria might be, because they're not necessary because it doesn't implicate a violation of a water law. Counsel, you're down to four-and-a-half minutes for your entire side. You indicated a plan to share. I would like to invite my co-counsel. Oh, you may do so. Thank you very much, Your Honor. May it please the Court, my name is John Martin. I represent Western Energy Company, the Crow Tribe, Local 400, and the other parties that are mentioned in the pleadings. I'd like to, if I may, address the direct questions that were asked by the panel with respect to rightness and the Article III issue. First point, we have, in fact, made the argument that this is a violation of Article III. Put bluntly, until that permit is issued and until the plaintiffs actually suffer harm, there is no Article III standing. If it pleases the Court, there are three different things, at least, that are missing now from that which is required to establish standing. First, Your Honors, we don't know at this point in time whether or not there will be a permit that issues at the Rosebud Mine. Second, we don't know the content of the CHIA. It may well be the case that the CHIA in this instance is one that satisfies the plaintiffs, and as counsel has just said, this will be the first instance where MEIC has actually participated in this permitting process. They haven't participated in the previous 19. So there's no reason for anyone at this point in time to predict that, in fact, there will be a particular decision with respect to the CHIA in this instance. Finally, Your Honors, it's plainly the case that plaintiffs can't establish what would happen with respect to their members. They can't say at this point in time that that particular permit, that that particular CHIA will, in fact, harm their members. Well, that's not the standard in NEPA cases, for example, because this would be a procedural violation, and the allegation has to be that if, that certain decisions may be made that could affect us. So your other two points are better. Your Honor, your point's well taken, and I appreciate the reality that this circuit has clearly held that NEPA challenges amount to a procedural violation. Here, however, we don't know that there would be a procedural violation. We simply don't know it. But I did check, and it does appear that most of the time, not necessarily all the time, a NEPA challenge proceeds after a decision to proceed has been made. Not that anything's happened, but that a record of decisions exists. That's correct, Your Honor. Your Honor, it's plainly the case that there is no standing in a NEPA case until the decision is made that the plaintiff's fine fault with that decision making. I'm not sure that's always true, but it's usually true. Okay. And I guess the exception would be those instances where the agency has said. Well, now, Mr. Morris uses the term, he's really asking for a compliance order. What's your response to that? Well, I think what he's suggesting with that phrase is that his action is limited to the citizen suit provision, and I don't profess to be making this. What if I hypothetical? What if we have adequate state statutes, but the administrator says, you know, I'm just not doing these SHIAs anymore. They're no use. I'm not doing them. Okay. Can you bring a case, a citizen suit, or does that have to wait for an actual permit? I believe the answer is they cannot bring the case. And the reason why I say that, Your Honor, is because this case is based purely on the definition of material damage under the Montana statute. I know, but that's why I'm trying to get at the ripeness issue separately from the ex parte young question. Suppose the federal statute does require that there be a SHIA, right? Fair enough. I'm not doing them. Okay. Says the administrator. And to isolate the ripeness case, I think what would have to happen is that in the individual circumstance, she would have to make the decision, I'm not doing it. Now, if she said- What about a pattern? No more, never. I'm never doing one. I think if she said that in a legal sense, then you might fall within what the prediction rule that the plaintiff selects is possible. Well, that's the question. What are we predicting? Are we predicting whether she's going to comply with the SHIA requirements or are we predicting whether she's going to issue the permit? I think they have to- She might still not issue the permit, but I'm not doing a SHIA. Okay. If that's the case, Your Honor's point is well taken. We don't know at this point in time whether or not the permit itself would be issued. And- Thank you. Go ahead. The time for your side has expired. Thanks so much. Thank you very much. The case just argued will be submitted for decision.
judges: O'scannlain, Kleinfeld, Berzon